## NEBRASKA & K. FARM LOAN CO. v. BELL.

(Circuit Court of Appeals, Eighth Circuit. October 2, 1893.)

### No. 260.

CORPORATIONS—CONTRACTS—RATIFICATION BY DIRECTORS.

A board of directors of a corporation authorized by its by-laws to borrow money and execute securities therefor may ratify the unauthorized execution of a promissory note by the secretary of the corporation for money borrowed, and thus bind the corporation.

In Error to the Circuit Court of the United States for the District of Nebraska.

At Law. Action by Ortha C. Bell, receiver of the First National Bank of Red Cloud, Neb., against the Nebraska & Kansas Farm Loan Company, on a promissory note. Verdict and judgment for plaintiff. Defendant brings error. Affirmed.

C. G. Greene, (Irving F. Baxter and G. R. Chaney, on the brief,) for plaintiff in error.

James McNeny, H. H. Baldridge, and B. S. Baker, for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

CALDWELL, Circuit Judge. This action was brought in the United States circuit court for the district of Nebraska by Ortha C. Bell, as receiver of the First National Bank of Red Cloud, Neb., against the Nebraska & Kansas Farm Loan Company, hereafter called the "company," to recover the contents of a promissory note, of which the following is a copy:

"$5,545.00.                                    Red Cloud, Nebraska, May 4, 1891.

"Sixty days after date we promise to pay to the order of the First National Bank of Red Cloud, fifty-five hundred forty-five and 00-100 dollars,

at the First National Bank of Red Cloud, with interest at ten per cent. per annum from maturity until paid.

"Value received. Nebr. & Kas. Farm Loan Co.

"J. A. Tulleys, Secy."

The complaint also contains a count for money had and received. The answer alleged that Tulleys, as secretary of the company, had no authority to make the note, and averred that the company never received any consideration for the same. There was a trial before a jury, and a verdict and judgment for the plaintiff, and the defendant sued out this writ of error.

The company was incorporated under the laws of Nebraska on the 28th day of February, 1885. The charter declared the business of the corporation to "be the buying and selling of county, precinct, and school bonds, municipal securities of all kinds, the effecting of loans upon real estate, and guarantying the same; and buying, selling, and dealing generally in all kinds of public and private securities." The charter provides that "the affairs" of the company shall be conducted by a board of nine directors, who are to elect the officers of the company, namely, a president, vice president, secretary, and treasurer, and prescribe their duties. The by-laws, among other things, provide that the board of directors "shall have entire control of all loans and purchases of securities, of all money and property, of all sales, trades, negotiations connected with the business of the corporation;" and that "they shall have power to borrow money and execute any manner of security for the payment of the same." Robert V. Shirey was treasurer and J. A. Tulleys secretary of the company. Although the company was a Nebraska corporation, and its charter provided that its principal place of business should be at Red Cloud, Webster county, Neb., and its secretary and treasurer resided there, the majority of its shareholders and directors resided in the state of New York, and the board of directors commonly held their meetings at the city of Albany, in that state. It was essential to the exercise of its charter powers that the company should have an officer or agent authorized to manage and conduct its affairs at the place designated in the charter as its principal place of business. Accordingly, the business of the company was in a large measure committed to and managed and conducted by its treasurer, who made monthly written reports of his operations to the board in New York. Mr. Shirey, the treasurer, testifies:

"I was, by virtue of my official position, manager of the loan company, and had control of its business. A majority of the shareholders and directors reside in the state of New York, and they committed the transaction of their business and the protection of their interests to me. * * * During the intervals between meetings of said board, I, as treasurer of the company, conducted its business."

The note in suit had its origin as follows: The company owned several tracts of land, upon which there were prior mortgages. The lands were unproductive, and the interest accruing on the mortgages and the taxes on the lands made it desirable, in the opinion of the treasurer, for the company to get rid of them. Accordingly he sent

an agent to Cincinnati, Ohio, who traded these lands to some party in that city for a stock of goods. In the trade the goods were valued at $29,025, and the lands at $19,425. The difference between the value of the goods and the lands, namely, $9,600, was paid in cash in the following manner: At the time of the trade there was to the credit of the company in the First National Bank of Red Cloud $2,100, and the treasurer borrowed for the company from the bank $7,500 and the $2,100 to the credit of the company and the $7,500 borrowed went to pay the balance due in the trade for the goods. For the $7,500 borrowed from the bank the secretary of the company, by the direction of the treasurer, executed at the time—May, 1890—the company's note. This note was renewed from time to time, and payments made thereon at different times, the money to make the payments being derived from a sale of a part of the goods. The note in suit is the last renewal, and was given for the balance due on the $7,500 note after deducting payments and adding some overdrafts of the company.

The only questions in the case to be determined are, had the secretary authority to execute a note for borrowed money binding upon the company, and, if not, had the directors of the company power to ratify his act, and, if so, did they ratify it? Under the charter and by-laws of the company it is very clear that the secretary had no authority to bind the company by executing a promissory note in its name, without the previous sanction or authority of the directors. It is equally clear that when he did execute a note in the name of the company for borrowed money, it was competent for the board of directors to ratify and adopt his act, and that when they did so the note bound the company as fully as if its execution had been authorized in advance. It is a maxim that whatever may be authorized in advance may be ratified afterwards. Mor. Priv. Corp. §§ 228--231, 623--625; Allis v. Jones, 45 Fed. Rep. 148. As we have seen, the by-laws provide that the board of directors "shall have power to borrow money and execute any manner of security for the payment of the same." Undoubtedly, under this grant of power, the board could execute, or cause to be executed, in the name of the company, a promissory note for the money it borrowed. It could authorize the secretary to execute the note in the name of the company in advance, or, if he executed such a note without authority, it could ratify its execution afterwards. It is only where there can be no authorization of a given act in advance that there can be no ratification afterwards. Whether the board did ratify the act of the secretary is a question of fact which it was the province of the jury to determine. The instructions of the court submitting that question to the jury are not subject to any just exception on the part of the defendant. We do not think they state the rule on the subject of ratification in cases like this as strongly and favorably for the plaintiff as the law and the facts warranted. Indianapolis Rolling Mill Co. v. St. Louis, Ft. S. & W. Ry. Co., 120 U. S. 256, 7 Sup. Ct. Rep. 542; Pittsburgh, C. & St. L. Ry. Co. v. Keokuk & H. Bridge Co., 131 U. S. 371, 9 Sup. Ct. Rep. 770.

It is unnecessary to go into a detailed history of the trade for the

goods. That was no concern of the bank, and it is quite immaterial whether the company made or lost money by the transaction. The bank loaned the money to the company, through its secretary and treasurer, to complete the trade, and the jury have found, under proper instructions, that, with a full knowledge of all the facts, the directors ratified and adopted the acts of its secretary and treasurer in the matter.

The judgment of the circuit court is affirmed.